UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RECO REED,

    Plaintiff,

    v.

DENNIS LARSON and WEXFORD
HEALTH SOURCES, INC.,

    Defendants.

Case No. 18-cv-1182-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 60) of Magistrate Judge Gilbert C. Sison recommending that the Court grant in part and deny in part defendant Dr. Dennis Larson's motion for summary judgment (Doc. 39), joined by defendant Wexford Health Sources, Inc. ("Wexford") (Doc. 59), on the grounds that plaintiff Reco Reed failed to exhaust his administrative remedies. All parties have objected to the Report (Docs. 61 & 62).

**I.    Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.    Analysis**

This matter arose after Reed began suffering pain from an inguinal hernia in March 2017. He was still suffering when he was transferred to the Big Muddy Correctional Center ("Big Muddy") in July 2017. The Illinois Department of Corrections contracts with Wexford to provide health services to inmates at Big Muddy.

In November and December 2017, Reed sought treatment from Big Muddy's health care unit where a nurse told him to push his hernia back into place (called a "reduction"), to buy pain medication from the commissary, and that he would need surgery to fix it permanently. Although Reed suffered serious pain, he was not scheduled to see a doctor until January 3, 2018, when he first saw Dr. Larson. Dr. Larson did not prescribe any medication and told Reed to follow up with him in ninety days. Reed believes that Wexford, Dr. Larson's employer, had a policy of not approving hernia surgery unless and until the hernia became strangulated or incarcerated (unable to be reduced and risking necrosis and infection) even where lesser treatment was ineffective to treat pain. He asserts that Dr. Larson refused to order surgery simply because he knew that Wexford would not approve it. After months of suffering, Reed finally received surgery in September 2018, but suffered permanent complications from the surgery.

In the Report, Magistrate Judge Sison noted that Reed filed three grievances concerning the matter, dated November 25, December 25, and December 31, 2017, respectively. He found that Reed exhausted his administrative remedies in the normal manner with respect to the November 25 grievance, but not the other two. He further found that additional remedies were not available for the December 25 emergency grievance because the chief administrative officer took eight days to decide whether the grievance was actually an emergency, so the failure to exhaust that grievance was excused. Magistrate Judge Sison concluded that Reed had not exhausted administrative remedies for his claims against Larson because all his grievance predated Dr. Larson's involvement in his care,. He further concluded that the November 25 and December 25 grievances complaining generally of the medical care provided for his hernia sufficiently exhausted his policy and practice claims against Wexford.

A.  Dr. Larson

Reed objects to Magistrate Judge Sison's finding that he failed to exhaust his remedies for his

claims against Dr. Larson. While Reed admits he did not refer to Dr. Larson in his grievances, he argues that under the "continuing violation" theory, he only needed to file single grievance about his hernia treatment in order to exhaust his remedies against any subsequent treaters involved in that course of treatment.

The Court of Appeals for the Seventh Circuit has accepted the "continuing violation" theory to avoid redundant grievances. The continuing violation theory, created in the statute of limitations context, views a series of failures to treat a medical condition as a single wrong that ends, for limitations purposes, when treatment is provided or the inmate is released. *Jervis v. Mitcheff*, 258 Fed. App'x 3, 5-6 (7th Cir. 2007). The theory allows a delay in the accrual of a cause of action until the date of the inmate's last injury. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). It allows a plaintiff to reach back for damages to the beginning of an injury "even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Id.* It does not, however, allow a plaintiff to reach back to before a particular defendant became aware of the inmate's problem—and thus potentially indifferent to them—until later. *Id.* at 318.

The Court of Appeals for the Seventh Circuit has applied this theory to relieve an inmate of the requirement to file a grievance about each instance in a defendant's series of the same continuing wrongs. "In order to exhaust their remedies, prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). In *Turley*, the theory was applied to the systemic application of a prison lockdown policy that occurred both before and after a grievance about the policy. *Id.* The Court of Appeals viewed application of the policy as a continuing violation that permitted a later-filed grievance to reach back to earlier lockdowns under the same policy. *Id.* It

3

noted that "[s]eparate complaints about particular incidents are only required if the underlying facts or the complaints are different." *Id.*

The Court of Appeals for the Seventh Circuit recently declined to apply the theory in *Barrow v. Wexford Health Sources, Inc.*, No. 18-1929, 2019 WL 5681378 (7th Cir. Nov. 1, 2019). That case involved an inmate's complaints about the treatment he received by prison medical personnel for an extended eye condition that he believed required surgery. *Id.* at *1. When the prison's medical director recommended delaying the surgery, and the other medical reviewers agreed, the inmate filed two grievances over the delay. *Id.* Eight months after the second grievance, a new medical director took over at the prison, and the inmate had the surgery seven months later. *Id.* The inmate sued the new medical director for deliberate indifference, but the Court of Appeals found that the grievances, which predated the new director's arrival at the prison, did not exhaust the inmate's remedies against him because the inmate did not name him in any grievance. *Id.* at *2. The Court noted that since the grievances were filed before the new medical director's arrival on the scene, they could not possibly have grieved his conduct. *Id.* The Court acknowledged *Turley*'s continuing violation theory, but distinguished *Turley* because it involved a systemic practice in the prison rather than specific conduct by a defendant. *Id.*[1]

The continuing violation does not apply to Reed's case against Dr. Larson. The Illinois grievance rules require an inmate to refer either by name or description to the people involved in the complaint. *See* 20 Ill. Admin. Code § 504.810(c). In his November 25, 2017, grievance, Reed complained that he tried to see the med tech about his hernia and was told he had to pay $5.00. He implied that he had failed to receive treatment not because he refused the treatment itself but instead

---

[1] In light of *Barrow*, the Court is not persuaded by the non-binding district court decisions cited by Reed regarding the continuing violation theory applied to the grievance requirement.

4

that he had failed to receive treatment because he refused to pay the $5.00 co-pay. He then asked for damages, in part, for deliberate indifference. Even under a liberal reading of this grievance, Reed does not complain about any medical matter in which Dr. Larson could have been involved. It is purely a complaint about the lack of medical care *due to a co-pay* policy, not due to any medical decision or failure to act in a medical matter.

In his December 25, 2017, emergency grievance, Reed complained about his contact with a nurse, the subsequent failure to be scheduled for a doctor's appointment promptly, and the failure to receive any pain medication. This grievance was about a nurse's conduct and the scheduling of doctor appointments, neither of which involved Dr. Larson. Just like in *Barrow*, the inmate's grievance could not have concerned a doctor who was not even involved with the inmate's care yet and had not yet had any occasion to be deliberately indifferent to his medical needs.

Furthermore, this is not the kind of situation where it would be unreasonable to require Reed to file a separate grievance about Dr. Larson's conduct once he had seen him. In *Turley*, the plaintiff was grieving the systemic implementation of a single lockdown policy by the same institution. The Court said he did not have to re-grieve each lockdown since he was essentially complaining about one thing—the policy—done repeatedly by the same defendant. In this case, Reed does not complain of one systemic practice but of two different types of wrongs. In late 2017, he complained about the lack of medical treatment, and in this lawsuit he complains about the quality of Dr. Larson's medical treatment in 2018, misconduct of a different nature than that cited in the November 25 and December 25, 2017, grievances. The continuing violation theory does not absolve Reed of his obligation to file separate complaints about particular incidents involving different people where the underlying facts or complaints are fundamentally different. *See Turley*, 729 F.3d at 650. While one grievance about Dr. Larson's treatment might have sufficed to grieve Dr. Larson's course of treating Reed, the continuing

5

violation theory does not allow Reed's earlier grievances to exhaust his claims against a doctor whose conduct had not yet had any effect on him.

For these reasons, the Court will adopt Magistrate Judge Sison's recommendation to dismiss Reed's claims against Dr. Larson for failure to exhaust administrative remedies.

B.    <u>Wexford</u>

Wexford objects to Magistrate Judge Sison's finding that Reed exhausted all remedies available to him in his December 25, 2017, grievance. Like Dr. Larson, it argues that Reed did not name Wexford or identify any Wexford policy or procedure in any of his grievances, so the grievances cannot be found to have exhausted his remedies against Wexford. It also argues for the first time that the failure to respond to Reed's December 25, 2017, emergency grievance until January 2, 2018, did not render further remedies along that path unavailable.

The Court first notes that Wexford requested to join Dr. Larson's summary judgment motion a little more than a week before Magistrate Judge Sison issued the Report. This did not give Reed sufficient time to respond to Wexford's request for summary judgment.

Additionally, Wexford makes only cursory arguments, adopting wholesale Dr. Larson's position without adding anything new of substance. However, Wexford and Dr. Larson are not in sufficiently similar positions to make this an effective defense strategy. Dr. Larson argued that he was not involved in Reed's treatment until after he filed his grievances; Wexford was clearly involved earlier, at least to some extent, because it is the entity responsible for providing medical care to inmates like Reed. By failing to make any non-conclusory arguments in support of summary judgment tailored to its circumstances, Wexford has waived those arguments. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (arguments that are "underdeveloped, conclusory, or unsupported by law" are waived).

In sum, Wexford has not carried its burden of proving the affirmative defense of failure to exhaust administrative remedies. The Court will therefore adopt the Report's conclusion as to the claims against Wexford.

## III. Conclusion

Having reviewed the matter *de novo*, the Court finds for the reasons stated therein, as modified by the discussion above, that the Report's conclusions are correct. Accordingly, the Court:

- **ADOPTS** the Report (Doc. 60) as **MODIFIED** by this order;

- **OVERRULES** the objections (Docs. 61 & 62);

- **GRANTS** Dr. Larson's motion for summary judgment (Doc. 39) and terminates him as a defendant in this case;

- **DENIES** Wexford's joined motion for summary judgment; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   December 12, 2019**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
