IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RECO REED, B18431, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-01182-JPG |
| | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

This matter is now before the Court for a decision on Plaintiff Reco Reed's motion for an award of attorney's fees, costs, and expenses, *see* Doc. 142. Defendant Wexford Health Sources, Inc. (Wexford) filed a response in opposition to the motion, *see* Doc. 153. As explained in more detail below, Reed's motion shall be **GRANTED in part and DENIED in part**.

### BACKGROUND

Reed filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 on May 31, 2018. (Doc. 1). In his original Complaint, Reed brought Eighth Amendment deliberate indifference claims against Dr. Dennis Larson for failing to provide him with pain relief treatment for his hernia (Count 1) and for denying Reed surgery to correct his hernia (Count 2). The claims survived screening under 28 U.S.C. § 1915A on June 27, 2018. (Doc. 10).

Attorney Thomas Pliura entered an appearance on behalf of Reed on August 16, 2018. (Doc. 14). With the assistance of counsel, Reed filed a Second Amended Complaint to add an Eighth Amendment deliberate indifference claim against Wexford for its policy, practice, or procedure of denying hernia repair surgery requests unless the hernia was strangulated or incarcerated (Count 1) and an Eighth Amendment deliberate indifference claim against Wexford

1

and Dr. Larson for knowingly disregarding Reed's serious medical need by failing to take proper measures to treat the hernia as it worsened (Count 2). (*See* Doc. 49). The Court allowed Count 2 to proceed against Dr. Larson, but the claim was dismissed at summary judgment on exhaustion (Doc. 64). Count 1 survived screening and summary judgment against Wexford, *see* Docs. 48, 64, 87, and proceeded to trial on April 4, 2023. Following a 3-day trial, the jury returned a verdict in favor of Reed and awarded $250,000.00 in compensatory damages and $500,000.00 in punitive damages. (Doc. 131).

## MOTION FOR ATTORNEY'S FEES, COSTS, & EXPENSES

Reed now seeks attorney's fees, costs, and expenses. (Doc. 142). Although Reed filed this action *pro se*, Attorney Pliura has represented him at all times since August 16, 2018. (Doc. 14). Reed seeks an award for attorney's fees incurred during the 4 years 8 months this action was pending.[1] (Doc. 142). This includes attorney, paralegal, and secretarial fees in the gross amount of $618,654.50, 25% of which is assessed against Reed under 42 U.S.C. § 1997e, and results in a net amount of $463,990.87, as follows:

| | |
|---|---|
| **Attorney Pliura's fees:** 820.2 hours X $750.00/hour | **$615,150.00** |
| **Paralegal:** 23.5 hours X $125.00/hour | **$   2,937.50** |
| **Secretary:** 8.1 hours X $70.00/hour | **$       567.00** |
| **Gross amount:** $615,150.00 + $2,937.50 + $567.00 | **$618.654.50** |
| **Net amount:** $618,654.50 X 0.75 | **$463,990.87** |

(Doc. 143, pp. 3-4; Doc. 153, p. 1).

Reed also seeks costs and expenses in the total amount of **$17,210.04**, and this includes $15,000.00 for his expert, Dr. Clay DeMattei. *Id*.

---

[1] Counsel continued to represent Reed in his post-judgment motion briefing.

2

Wexford asks the Court to deny Reed's request or substantially reduce the award on the following grounds: (1) Reed must pay the fee award out of the judgment; (2) Pliura's hourly rate is excessive; and (3) Pliura's total hours must be substantially reduced due to inclusion of work not properly billable and excessive in time.  (Doc. 153, pp. 3-4).

### APPLICABLE LEGAL STANDARD

A district court "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs" in an action brought pursuant to 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1988(b); *Capps v. Drake*, 894 F.3d 802, 804 (7th Cir. 2018).  When calculating attorney fees, the starting point is ordinarily the lodestar, which consists of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  *Thomcreek Apartments III., LLC v. Mick*, 886 F.3d 626, 638 (7th Cir. 2018).  However, the ultimate size of the attorney fee award is derived from "three numbers: the hours worked, the hourly rate, and any overall adjustments up or down."  *Id*.  The Seventh Circuit Court of Appeals explains the calculation this way:

> The district court first calculates the lodestar, which is the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else.  The total time should exclude work that was excessive, redundant, or otherwise unnecessary.  The lodestar may also take into account factors such as the amount involved and the results obtained, as well as the experience, reputation, and ability of the attorneys.  Once the lodestar is calculated, it may be appropriate to adjust it further.  While a plaintiff who achieves excellent results should receive the entire lodestar, that sum may be excessive for one who has achieved only partial or limited success.

*Id*. (internal citations and quotation marks omitted).  The lodestar method "*roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis in original)).

In a suit brought by a prisoner, the Prison Litigation Reform Act (PLRA) provides that fees authorized under § 1988 shall be awarded only to the extent the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights, and: (i) the amount of the fee is proportionately related to the court ordered relief for the violation; or (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation. 42 U.S.C. § 1997e(d)(1) ("para. (1)").

The PLRA further limits the amount of attorney's fees that are recoverable in several respects. 42 U.S.C. § 1997e(d). First, a portion of the judgment (not to exceed 25%) must be applied to satisfy the attorney's fee awarded against the defendant. 42 U.S.C. § 1997e(d)(2). Second, a defendant can be liable for the balance of the fee award up to 150% of the judgment.[2] *Id*. Third, no award of attorney's fees in an action described in para. (1) shall be based on an hourly rate greater than 150% of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel. 42 U.S.C. § 1997e(d)(3). Finally, a prisoner is not prohibited from entering into an agreement to pay attorney's fees in a greater amount, if the fee is paid by the individual rather than by the defendant pursuant to § 1988. 42 U.S.C. § 1997e(d)(4).

Reed bears the burden of establishing entitlement to an award of attorney's fees here and documenting support for it. *Hensley*, 461 U.S. at 437. Once Reed establishes that the award is reasonable, however, the burden shifts to Wexford to show that it is unreasonable. *Vega v. Chi. Park Dist.*, 12 F.4th 696, 702 (7th Cir. 2021). The Supreme Court has made it clear that a request for attorney's fees "should not result in a second major litigation." *Hensley*, 416 U.S. at 437.

---

[2] This limit far exceeds Reed's request for attorney's fees here because 150% of the $750,000 judgment equals $1,125,000. *See* 42 U.S.C. § 1997e(d)(2).

**DISCUSSION**

**A.      Prevailing Party**

For purposes of the pending motion, Reed qualifies as the prevailing party because he obtained a money judgment on a substantial part of his claims.  "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  A judgment for money damages in any amount counts for prevailing party status for the purpose of attorney's fees under § 1988.  *Id*. at 113.

Reed's success was partial.  He obtained a favorable judgment on one of his claims against Wexford, *i.e.*, Count 1.  His second claim was dismissed at screening against Wexford and at summary judgment on the issue of exhaustion against Dr. Larson, *i.e.*, Count 2.  (Docs. 49, 64). When determining whether a party's limited success still qualifies him as a prevailing party, the Court considers three factors: "the extent of relief, the significance of the legal issue on which the plaintiff prevailed, and the public purpose served."  *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring), *quoted in Hatcher v. Consol. City of Indianapolis*, 126 F. App'x 325, 327 (7th Cir. 2005).

All three factors weigh in favor of a finding that Reed was the prevailing party.  The jury considered the important issue of inmate medical care when it decided whether Wexford caused a violation of Reed's Eighth Amendment rights through its policy or customary practice of denying hernia repair surgery unless a hernia is strangulated or incarcerated and whether this policy caused him to suffer harm.  The jury returned a substantial verdict in Reed's favor, including $250,000.00 in compensatory damages and $500,000.00 in punitive damages.  Reed's compensatory damages award matched his request, while his punitive damages award exceeded his request by more than

threefold.  This verdict serves the public purpose of promoting timely and adequate medical treatment of hernias and hernia pain in the prison population.  Under the circumstances, the Court finds that Reed is the prevailing party, even though he did not obtain complete relief on all claims.  The Court will exercise its discretion and award him attorney's fees.

**B.     Lodestar Calculation**

       1.     <u>Reasonable Hourly Rate</u>

Reed asks the Court to use Attorney Pliura's usual and customary hourly legal rate of $750.00/hour when awarding attorney's fees.  (Doc. 143, p. 5).  He offers a detailed explanation for this rate.  *Id*. at 5-6.  He submitted a third-party affidavit of another attorney to support this request.  (Doc. 143, Ex. I).  Reed also points to Pliura's experience working in Illinois as a licensed practicing physician since 1984 and an attorney since 1987.  *Id*.  He describes Pliura's work as a prison physician for inmates in the custody of the IDOC and Vermillion County Sheriff's Department for 25 years.  Reed cites two other prisoner cases where Pliura was recruited as counsel and requested an hourly rate following trial of $700.00/hour (2015) and $750.00/hour (2022).[3]  *Id*. at 9.  Pliura also prevailed in three prisoner cases before litigating the complex constitutional issues in this case.  *Id*. at 11 (citing *Ratliff v. City of Chi.*, 2013 WL 3418070, at *2 (N.D. Ill. July 8, 2013)).  Pliura's past and present work resulted in a significant jury verdict and a large punitive damage award.  Given this, Reed asserts that Pliura's hourly rate of $750.00 is well justified.

---

[3] Wexford points out that Pliura requested, but did not receive, these fees.  (Doc. 153, p. 8) (citing *Beard v. Wexford*, Case No. 11-cv-03360 (C.D. Ill. 2015)).

While that may be true, the PLRA strictly limits the rates a court can use when calculating an award of attorney's fees in a prisoner case.[4]  *See* 42 U.S.C. §1997e(d)(3).  According to the PLRA, an attorney's fee award in a prisoner case is capped at no more than 150% of the hourly rate established under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A, for court-appointed counsel.  *Id*.  Applying that cap to the CJA rate for each year Attorney Pliura represented Reed yields the following PLRA-limited rates:

| Time Period | CJA Rate | PLRA-Limited Rate (150% of CJA Rate) |
|---|---|---|
| 01/01/2018 - 12/31/2018 | $140.00 | $210.00 |
| 01/01/2019 - 12/31/2019 | $148.00 | $222.00 |
| 01/01/2020 - 12/31/2020 | $152.00 | $228.00 |
| 01/01/2021 - 12/31/2021 | $155.00 | $232.50 |
| 01/01/2022 - 12/31/2022 | $158.00 | $237.00 |
| 01/01/2023 - 12/31/2023 | $164.00 | $246.00 |
| **Average** | --- | $229.25/hr |

*See* 42 U.S.C. § 1997e(d)(3).[5]  The Court will use the PLRA-limited rates in this case.

Reed argues that this rate cap does not apply because Pliura was retained as private counsel and did not serve as "court-appointed counsel" as that term is used in 42 U.S.C. § 1997e(d)(3). (Doc. 153).  However, he misconstrues the text of the PLRA.  According to the relevant language:

> No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 **for payment of court-appointed counsel**.

42 U.S.C. § 1997e(d)(3) (emphasis added).  The phrase "for payment of court-appointed counsel" describes the applicable section of title 18 that governs the appointment of counsel and payment

---

[4] In other non-prisoner cases, the appropriate fee under § 1988 is the market rate for legal services that are spent on the successful portion of litigation. *Richardson v. City of Chi.*, 740 F.3d 1099, 1103 (7th Cir. 2014).
[5] *See* https://www.ca7.uscourts.gov/criminal-justice-act/cjarates (last visited April 9, 2024).

of fees in criminal cases.  18 U.S.C. § 3006A.  The Court must use the hourly rates set forth in that section when calculating PLRA-limited rates.  However, that reference does not free Pliura from the rate cap applicable to an award of attorney's fees in this prisoner case simply because Pliura served as Reed's private attorney.  The PLRA rate cap still applies and limits this Court's ability to award attorney's fees based on hourly rates that exceed the ones listed in the table above.

Wexford cites other cases where the PLRA-limited rates were applied in a case involving private counsel.  *See Spencer v. Vagnini*, 2022 U.S. Dist. LEXIS 231625, at *17 (W.D. Wis. Dec. 27, 2022) (court "require[d] the plaintiff to amend the motion to calculate the hourly rates for each lawyer based on the limited rates mandated by the PLRA, because that is 'the absolute cap' allowed under § 1997e(d)(3).").  Wexford also points out that the PLRA-limited rates were used to calculate the attorney's fees awarded to Pliura in at least one other prisoner case where he requested $700.00/hour.  In *Beard v. Wexford*, Case No. 11-cv-03360 (C.D. Ill. 2015), he sought $244,685.00 in attorney's fees, $11,475.86 in costs, and $9,205.00 in expert fees, and he was awarded $70,192.28 in attorney fees (less than 29% of Plaintiff's request) and $2,409.05 in nontaxable expenses.  (Doc. 153, Ex. C).  The attorney's fees reflect a rate consistent with the PLRA-limited rates in § 1997e(d)(3).

This Court is bound by the PLRA-limited rates set forth in the above-referenced table and will use these rates to calculate the award of attorney's fee in this case.[6]

---

[6] While the Court cannot award attorney's fees based on an hourly rate that exceeds the cap, Reed is not prohibited from entering into an agreement to pay his attorney's fees in a greater amount than the capped rate, "if the fee is paid by the individual rather than by the defendant pursuant to § 1988."  *See* 42 U.S.C. § 1997e(d)(4).

8

2. <u>Reasonable Hours Worked</u>

The Court turns to the hours expended in litigation. Attorney Pliura claims that he logged 820.2 total hours for his work, and Wexford shows 836 total hours, as follows:

| **Attorney Pliura's Breakdown**<br>**Hours Worked / Year** | **Wexford's Breakdown**<br>**Pliura's Hours Worked / Year** |
|---|---|
| **2018:**  97.45 hours | **3/23/18 – 2/14/19:**  184.25 hours |
| **2019:** 163.25 hours | **2/15/19 – 12/31/19:**  75 hours |
| **2020:**  36.5 hours | **01/01/20-12/31/20:**   36.25 hours |
| **2021:** 262.75 hours | **01/01/21-12/31/21:** 260.75 hours |
| **2022:**  40 hours | **01/01/22-12/31/22:**  38 hours |
| **2023:** 242.25 hours | **01/01/23-12/31/23:** 241.75 hours |
| **TOTAL: 820.2 hours**[7] | **TOTAL:  836 hours**[8] |

*See* Doc. 143, p. 3; Doc. 153, p. 8.

According to Pliura, "[a]ll the hours logged . . . were hours reasonably expended on the case," much of which time was spent litigating the "extensive defensive front established by Defendant." (Doc. 143, p. 4). Litigation took almost five years. Pliura represented Reed for all but two months.[9] During the course of litigation, Pliura defended against a motion for summary judgment, a motion to bar Reed's expert, objections to the expert's opinions, a motion to strike the expert, numerous motions *in limine*, and other pre- and post-trial motions. Reed's attorney prepared for and attended depositions, including the deposition of Wexford's expert. Pliura represented Reed at a jury trial that was continued more than once and ultimately lasted three days. And, Pliura has continued to represent Reed in his post-judgment motions and briefing. This case involved significant work, and the time spent litigating was generally reasonable.

---

[7] These hours actually total 842.2, not 820.2, but Pliura excluded hours worked by two associates.
[8] Wexford offers a different annual breakdown of hours, which is likely due, in part, to the fact that the CJA rates listed in 18 U.S.C. § 3006A cover different time periods in 2018 and 2019.
[9] Attorney Pliura explained that he first communicated with Reed on August 1, 2018, and appeared on his behalf on August 16, 2018.[9] The jury reached a verdict four years and eight months later on April 6, 2023.

The Court nevertheless finds that some time spent on this case pertained to claims that were unsuccessful. For example, Dr. Larson was dismissed at summary judgment on the issue of exhaustion in December 2019, and Wexford argues that all time spent litigating the claims against him should be excluded from the award of attorney's fees (206.75 hours), paralegal time (13.5 hours), and secretarial time (2.75). The Court will exclude a portion of these hours, while also recognizing that the work performed on the claims against Dr. Larson was legally and factually related and even necessary for success on Count 1 against Wexford. *See Hensley*, 461 U.S. at 436.

The Court also finds that other time billed in this case was excessive, vague, redundant, or even incorrect. By way of example only, the Court notes the following time that fits into one of these categories: (a) review *Guide for Attorneys Recruited to Represent Plaintiffs in Section 1983* on January 16, 2019 (5 hours); (b) check law 7th Cir. / research from September 15, 2021 to December 1, 2021 (53 hours); (c) post-trial research (28 hours); (d) review motion for summary judgment and motion to bar (45.5 hours, including 32.5 hours in one day); (e) response to Defendant's motion for summary judgment (131 hours); (f) more than 24 hours billed in one day on January 9, 2023. These times are excessive or redundant, and the documentation offered in support of them is vague.

When a fee petition is vague or inadequately documented, "a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000); *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 651, 657-58 (7th Cir. 1985). The Court declines to complete an item-by-item accounting here and reduces the proposed fee award by a reasonable percentage instead. The Court finds that the reasonable percentage reduction is 12%.

3.  Final Calculation

The Court has applied the lodestar calculation in three scenarios shown in the Addendum. All three scenarios multiply the reasonable hourly rate by the number of hours reasonably expended on the litigation, using the PLRA-limited rates and a 12% reduction in total hours. The three scenarios yield the following possible awards: (A) $165,468.07; (B) $167,006.25; and (C) $169,583.37. *See* Addendum. All three scenarios round up to $170,000.00.

Accordingly, the Court will award attorney's fees totaling **$170,000.00**. Of this amount, **$100,000.00** will be applied from Reed's judgment, and Wexford will be responsible for the remaining **$70,000.00**. *See* 42 U.S.C. § 1997e(d)(2).

**B.   Bill of Costs**

Reed claims $17,210.04 in costs and expenses. Federal Rule of Civil Procedure 54 provides that "costs—other than attorney's fees—should be allowed to the prevailing party" unless "a court order provides otherwise." FED. R. CIV. P. 54(d)(1). Per statute, recoverable costs include: (1) fees of the clerk and marshal; (2) fees for transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for copies necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts and interpreters. 28 U.S.C. § 1920; *Republic Tobacco Co. v. N. Atlantic Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007). The losing party bears the burden of showing that taxed costs are not appropriate. *Beaman v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 864 (7th Cir. 2005).

Wexford only challenges the $15,000.00 for Dr. DeMattei because the expert informed the jury that he was not charging for services:

>   Q: And you are being paid for your testimony, correct?
>   A: No.
>   Q: You are not being paid?

11

> A: No.
> Q: Isn't your rate to do this 500 dollars an hour?
> A: If I choose to send a bill, it is.
> Q: Do you choose not to bill Mr. Pliura for your time?
> A: I'm not billing him today.
> Q: You're not billing him to be here today?
> A: No.
> Q: Did you bill him for your time reviewing the records in this case?
> A: No.
> Q: You never generated a bill?
> A: No.

(Doc. 139, Trial Transcript. pp. 163-64; Doc. 153, pp. 1-4). Reed's request for $15,000.00 for Dr. DeMattei's time is denied. Costs and expenses shall be awarded in the amount of **$2,210.04**.

### CONCLUSION

Plaintiff Reco Reed's motion for an award of attorney's fees, costs, and expenses (Doc. 142) is **GRANTED, in part, and DENIED, in part**. Attorney's fees are awarded in the total amount of **$170,000.00**. Of this amount, **$100,000.00** will come from Reed's judgment award, and **$70,000.00** is assessed against Wexford. Because Reed is the prevailing party, the Court also awards costs and expenses in the total amount of **$2,210.04**, which excludes the expert fees requested for Dr. Clay DeMattei.

**IT IS SO ORDERED.**

**DATED**: April 19, 2024                s/ J. Phil Gilbert
                                         **J. PHIL GILBERT**
                                         **United States District Judge**